1
2
3
4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    GREEN RENEWABLE ORGANIC AND           Case No.  21-cv-07181-HSG
     WATER HOLDINGS, LLC, et al.,

8                 Plaintiffs,              **ORDER STAYING CASES AND
                                           HOLDING MOTIONS IN ABEYANCE**
9          v.
                                           Dkt. No. 33
10   BLOOMFIELD INVESTMENTS, LLC,

11                Defendant.

12   BLOOMFIELD INVESTMENTS, LLC,          Case No.  21-mc-80306-HSG

13                Plaintiff,               Dkt. No. 3

14         v.

15   GROW LAND AND WATER LLC, et al.,

16                Defendants.

17

18         Before the Court are Bloomfield Investments, LLC's ("Bloomfield") motions for an order

19   recognizing and confirming two related arbitration awards.  *See* Dkt. No. 33 ("NSL Mot.") in case

20   no. 21-cv-07181 ("Non-Signatory Litigation") and Dkt. No. 3 ("SL Pet.") in case no. 21-mc-

21   80306 ("Signatory Litigation").  The arbitration took place in London, United Kingdom, and it

22   concerned Bloomfield and the following persons and entities: (1) W. Quay Hays; (2) Grow Land

23   and Water LLC ("Grow Land"); (3) Kings County Ventures LLC ("KCV"); and (4) Green

24   Renewable Organic and Water Holdings, LLC (d/b/a/ Grow Holdings LLC) ("Grow Holdings")

25   (collectively, "Respondents").  Bloomfield's motions are fully briefed.  *See* Dkt. Nos. 39 ("NSL

26   Opp."), 43 ("NSL Reply") in the Non-Signatory Litigation and Dkt. Nos. 14 ("SL Opp."), 17 ("SL

27   Reply") in the Signatory Litigation.  The parties have also filed a statement of recent decision and

28   supplemental briefing.  *See* Dkt. Nos. 24, 25, 27 in the Non-Signatory Litigation and Dkt. Nos. 60-

63, 65 in the Non-Signatory Litigation.  The Court finds this matter appropriate for disposition without oral argument, *see* Civil L.R. 7-1(b), and **STAYS** the Non-Signatory Litigation and the Signatory Litigation and **HOLDS THE MOTIONS IN ABEYANCE** pending the resolution of the parallel English proceedings.

## I.    BACKGROUND

This dispute began with litigation in California involving Grow Land and KCV.  In 2009, Grow Land and KCV brought proceedings in California against certain defendants, including "Sandridge Partners," relating to options to purchase property in California ("Grow Land Litigation").  NSL Mot. ¶ 37.  Grow Land and KCV obtained judgment in their favor in April 2014 and were ultimately awarded $76.4 million of compensatory and punitive damages.  *Id.*  The defendants in that litigation promptly appealed.  *Id.*

To help finance the appeal, Grow Land and KCV entered into the Capital Provision Agreement ("CPA") with Bloomfield, under which Bloomfield agreed to provide $15 million in exchange for the return of its capital as well as the proceeds of the Grow Land Litigation.  *Id.* ¶ 38. Bloomfield later provided an additional $3 million in funding under the Amended CPA.  *Id.* ¶ 39. The CPAs "contained a general choice-of-law clause selecting New York law and an arbitration agreement specifying arbitration in London."  NSL Opp. at 2.

In 2017, Bloomfield learned that Grow Land and KCV settled the Grow Land Litigation for $2 million, which was significantly less than Bloomfield had previously estimated.  *See* NSL Mot. ¶ 4; NSL Opp. at 2.  Grow Holdings—a company that Mr. Hays and the Hays Family Trust had formed in 2010—settled a separate land-related dispute with Sandridge Partners, under which Sandridge Partners paid Grow Holdings $10.5 million in exchange for 5,100 acres of land.  *See* NSL Mot. at ¶ 4; NSL Opp. at 3.  Bloomfield believed that the $2 million settlement in the Grow Land Litigation, taken together with the larger settlement in the other litigation, was intended to shift value back to Respondents and away from Bloomfield.  NSL Mot. ¶ 40.

In June 2018, Bloomfield filed a request for arbitration in London against Grow Land, KCV, and Grow Holdings ("2018 Arbitration").  *Id.* ¶ 21.  Bloomfield alleged that the Grow Land Litigation was settled for a grossly undervalued amount in breach of a provision of the Amended

2

CPA that required Grow Land and KCV to use all "commercially reasonable efforts to pursue the claim and bring about monetization of the claim through a settlement or final judgment." *Id.* ¶ 40.

In May 2019, Bloomfield applied in the arbitration proceeding for the posting of security for costs against Grow Land and KCV. *Id.* ¶ 25. This application was based on a provision of the Amended CPA that in relevant part provides that: "The Counterparty shall be obliged to post security for costs as directed by the arbitral tribunal." *Id.* (citations omitted). The "Tribunal ordered (a) Grow Land and KCV to provide security to Bloomfield in the sum of £1.5 million; and (b) Bloomfield to provide security to Respondents in the sum of £1 million." *Id.* ¶ 26 (citations omitted). Grow Land and KCV did not comply with the Tribunal's order on the grounds that they lacked the resources to do so. *Id.* The Tribunal then confirmed that Grow Land and KCV breached their obligation to provide security for costs and stayed the requirement for Bloomfield to do so. *Id.*

In December 2019, Bloomfield sought to amend its Request for Arbitration to add Mr. Hays as a party. *Id.* ¶ 29. This request was premised on the argument that although Mr. Hays did not sign the CPA agreements, he was nevertheless bound by them as a matter of New York law on the basis of the alter ego doctrine and thus personally liable for the amounts sought in the 2018 Arbitration. *Id.* Bloomfield ultimately chose not to pursue its application to join Mr. Hays in the 2018 Arbitration and instead brought new proceedings against Mr. Hays and the other respondents before the same tribunal ("2020 Arbitration"). *Id.* ¶ 31.

The final hearings for the 2018 and 2020 Arbitration took place in July 2020. *Id.* ¶ 34. The Tribunal issued the two related arbitration awards ("Awards") on May 7, 2021, and the LCIA transmitted the Awards to the parties on August 16, 2021. *Id.*; NSL Opp. at 3. The Awards held that the Respondents breached the CPA and the Amended CPA by settling the Grow Land Litigation for a substantially undervalued amount and by "failing to use all commercially reasonable efforts to pursue the claim in the Grow Land Litigation. . ." NSL Mot. ¶ 34, 43 (citations omitted). "Bloomfield was awarded damages in the sum of $6 million—the difference between the reasonable settlement value and the actual settlement amount—and interest in the amount of $52,439,340.00." *Id.* ¶ 44 (citations omitted). Mr. Hays and Grow Holdings were

United States District Court
Northern District of California

found to be personally liable in the 2020 Award under New York law based on the alter ego and piercing the corporate veil doctrines. *Id.* ¶ 34; NSL Opp. at 3.

Respondents represent that Bloomfield initiated proceedings in England in September 2021 and "an English court granted Bloomfield's petition to enforce the Awards as judgments of the Court, subject to challenges as-of-right" by Respondents. NSL Opp. at 4. Respondents have moved to set the Awards aside "for lack of jurisdiction over non-signatories and 'serious irregularity' relating to the unconscionable interest rate." *Id.*; *see also* NSL Dkt. No. 61 ("Plaintiff's Supplemental Argument") at 1. In a procedural decision, the Commercial Court of England and Wales ("Commercial Court") stated that "the Tribunal's approach was a surprising, and very probably incorrect, way of seeking to arrive at a compensatory interest rate" and that "it produced an extreme result for which the parties could not on any view be said to have contracted." *See* Non-Signatory Litigation Dkt. No. 57-1 ("Commercial Court Decision") ¶ 115. The Commercial Court accordingly found it "clear" that Mr. Hays and his entities' substantive challenge to the Award "has good prospects of success." *Id.* ¶ 122.

In August 2020, Green Renewable Organic and Water Holdings and W. Quay Hays filed a complaint in the Superior Court of Napa County, asking the court for "declaratory judgment that neither Green Renewable or Hays was ever subject to the jurisdiction of the LCIA," that any award against them by the LCIA would be null and void, and that no court of competent jurisdiction has the right to enter judgment against Green Renewable or Hays "based on any award issued by the LCIA." *See* Non-Signatory Litigation Dkt. 1-1 ("Complaint") at 4. A year later, Bloomfield removed the Non-Signatory Litigation to this Court. In October 2021, Green Renewable and Hays filed an amended complaint for declaratory judgment that the Awards are unenforceable under the New York Convention. *See* Non-Signatory Litigation Dkt. 26. Bloomfield then filed a Motion to Confirm Foreign Arbitration Awards, one of the motions presently before the Court. *See* NSL Mot.

In December of 2021, Bloomfield filed a Petition to Confirm and Enforce Foreign Arbitration Awards against Grow Land and KCV, which were not parties to the Non-Signatory Litigation. *See* SL Pet. This petition—filed in a new case, the Signatory Litigation—is the other

1    motion presently before the Court.

2          This Court must now decide whether to rule on Bloomfield's two motions to confirm the

3    arbitration awards or stay the cases and defer resolution of the motions until after the parallel

4    English proceedings have concluded.

5    **II.   LEGAL STANDARD**

6          The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral

7    Awards ("New York Convention") governs the "recognition and enforcement" of foreign arbitral

8    awards in United States courts.  9 U.S.C. § 201.  Article V of the New York Convention provides

9    that courts may refuse to recognize and enforce a foreign arbitral award only if certain enumerated

10   conditions are met.  New York Convention, June 10, 1958, 21 U.S.T. 2517, 30 U.N.TS. 3.  On the

11   other hand, Article VI of the New York Convention states that if "an application for the setting

12   aside or suspension of the award has been made to a competent authority" a court "may, if it

13   considers it proper, adjourn the decision on the enforcement of the award and may also, on the

14   application of the party claiming enforcement of the award, order the other party to give suitable

15   security." *Id.*

16         As a general matter, a district court "has broad discretion to stay proceedings as an incident

17   to its power to control its own docket" in an effort to promote judicial economy. *Clinton v. Jones*,

18   520 U.S. 681, 706–07 (1997); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).

19   **III.  DISCUSSION**

20         Bloomfield moves to confirm the 2018 and 2020 Arbitration awards.  NSL Mot. at 1; SL

21   Pet. at 1. Respondents ask this Court to find that the Awards are unenforceable under Article V of

22   the New York Convention.  NSL Opp. at 1; SL Opp. at 1.  Alternatively, Respondents ask this

23   Court to exercise its discretion to defer ruling on the motions pursuant to Article VI of the New

24   York Convention until the Commercial Court decides the challenge proceedings before it. NSL

25   Opp. at 1; SL Opp. at 1.  For the reasons set forth below, this Court finds it prudent to hold the

26   motions in abeyance until the Commercial Court rules on the challenge proceedings.

27         The Second Circuit has held that courts "must take into account the inherent tension

28   between competing concerns" when deciding whether to grant a stay of confirmation under Article

United States District Court
Northern District of California

VI of the New York Convention. *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998). On the one hand, staying these proceedings could impede the goal of arbitration, which is "the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *Id.* For this reason, a stay of confirmation "should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration." *Id.* On the other hand, "where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Id.*

The *Europcar* court enumerated several factors a district court should evaluate when determining whether to grant an Article VI stay. *Id.* at 317-318. Although the *Europcar* decision is not binding in this circuit, the Court finds its analytical framework persuasive and follows it here.

The first *Europcar* factor encourages consideration of the "general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *Id.* at 317. Here, the Court recognizes that if it delays resolution of the enforcement motions, it will extend the litigation process. This factor weighs against granting a stay.

*Europcar* next suggests that the district court consider "the status of the foreign proceedings and the estimated time for those proceedings to be resolved." *Id.* Respondents admit that "it is difficult to estimate the duration of the English proceedings." NSL Opp. at 20. The Commercial Court has also granted Respondent's request for a 35-day extension on the grounds of "serious procedural irregularity." *See* Commercial Court Decision at ¶¶ 1, 141. Although this extension further delays the proceedings in England, this Court finds that the proceedings are generally moving expeditiously. As an example, the hearing on the procedural motions was held in March and the Commercial Court issued its decision in June. *Id.* at 1. This factor is neutral or weighs slightly in favor of granting a stay.

The third *Europcar* consideration is "whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review." *Europcar*, 156 F.3d at 317. The *Europcar* court explained that:

> The limited scope of review allowed under the Convention also favors deference to proceedings in the originating country that involve less deferential standards of review on the premise that, under these circumstances, a foreign court well-versed in its own law is better suited to determine the validity of the award." *Id.*

Here, the Awards will be subject to a less deferential standard of review in the English proceedings than they would be in California under the review allowed by Article V of the New York Convention.  In its procedural opinion, the Commercial Court identifies the principles applicable to an evaluation of "serious procedural irregularities."  Commercial Court Decision ¶¶ 77-89.  In applying these principles, the reviewing court in England would be applying a substantially less deferential standard of review than a court evaluating the Awards under Article V's narrow review standards.  The Respondents have also represented that they are challenging jurisdiction in England using two different mechanisms that "are moving in tandem with the challenge proceedings" and which "will entail a full *de novo* rehearing on jurisdiction."  Pls.' Suppl. Arg. at 5-6.  These proceedings would also result in a more stringent review of the Awards than the review allowed under Article V.  This factor weighs heavily in favor of granting a stay.

The fourth *Europcar* factor urges courts to consider "the characteristics of the foreign proceedings."  *Europcar*, 156 F.3d at 318.  Here, Bloomfield initiated the proceedings in England to enforce the Awards.  This, in turn, triggered Respondents' request to set aside the Awards.  It is true that Respondents filed the Non-Signatory Litigation in California before the Awards were even determined.  At bottom, however, Bloomfield asked the Commercial Court to confirm the Awards issued by the Tribunal before it asked this Court to confirm those Awards.  In the interest of international comity, it is proper to allow the Commercial Court to decide the substantive issues at the core of these cases.  *See* Commercial Court Decision ¶ 104(ii) (noting that even if this Court were to adjourn these enforcement proceedings, "a decision from [that] court on the Claimants' challenges could in the end expedite matters").  This factor weighs heavily in favor of granting a stay.

The fifth *Europcar* consideration calls for a balancing "of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive 'suitable security' and that, under Article V of the

7

1   Convention, an award should not be enforced if it is set aside or suspended in the originating

2   country . . ." *Europcar*, 156 F.3d at 318.  Here, Respondents would be materially prejudiced by

3   the premature enforcement of Awards which the Commercial Court might overturn.  Further, if the

4   Awards are confirmed and enforced, Bloomfield will be adequately compensated by the high

5   interest rate included in the Awards.  The Court in its discretion will not require Respondents to

6   post a security at this time.  This factor weighs in favor of a stay.

7        Under *Europcar*, the first and second factors "should weigh more heavily" in the Court's

8   determination.  *Id*.  Even though the first factor weighs against granting a stay, this Court finds

9   that the *Europcar* factors as a whole support granting an Article VI stay under the New York

10  Convention.  The Court will therefore "adjourn the decision on the enforcement of the award"

11  until the parallel proceedings in England have concluded.  New York Convention, June 10, 1958,

12  21 U.S.T. 2517, 30 U.N.TS. 3.  Bloomfield argues "that this Court can confirm the base award of

13  $6 million, even if it stays these proceedings with respect to the interest portion of the awards."

14  NSL Dkt. No. 65 ("Defendant's Response to Supplemental Argument") at 1.  In the interest of

15  judicial efficiency, the Court declines to take the proposed piecemeal approach to the confirmation

16  of the award.

17       Respondents state that they "do not seek to stay consideration of [their] Amended

18  Complaint" and that they are "entitled to independent relief under U.S. law: a declaratory

19  judgment finding that the Arbitral Awards are unenforceable in California against Plaintiffs."  *See*

20  NSL Opp. at 19 n.2.  In response, Bloomfield argues that the Court should not "stay Bloomfield

21  from enforcing the awards while simultaneously permitting the Non-Signatory Litigation to

22  proceed.  Doing so would create the same risk of inconsistent decisions from various tribunals on

23  issues such as jurisdiction and alter ego."  Def.'s Resp. to Suppl. Arg. at 4.  Bloomfield has the

24  better argument. The Court **STAYS** both the Non-Signatory Litigation and the Signatory

25  Litigation pending resolution of the parallel English proceedings.

## IV.    CONCLUSION

27       The Court **STAYS** its decision on Bloomfield's two motions to confirm the Awards (Dkt.

28  No. 33 in case no. 21-cv-07181 and Dkt. No. 3 in case no. 21-mc-80306) until the parallel English

United States District Court
Northern District of California

proceedings have concluded.

The Court **STAYS** case no. 21-cv-07181 and case no. 21-mc-80306 pending resolution of the parallel English proceedings.

The Court **DIRECTS** the parties to file a two-page joint status report detailing the progress of the English proceedings by October 31, 2022.

**IT IS SO ORDERED.**

Dated:   9/22/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge